## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DOUGLAS REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02945-TWP-MPB |
| | ) | |
| WEXFORD OF INDIANA, LLC, in their official | ) | |
| and individual capacity as Health Care Provider | ) | |
| for the Indiana Department of Correction, | ) | |
| DUAN PIERCE, | ) | |
| JENNIFER STURM, RN, as a nurse, in her | ) | |
| official and individual capacity at the Pendleton | ) | |
| Correctional Facility, | ) | |
| KRIS PRYOR, LPN, as a nurse, in her official and | ) | |
| individual capacity at the Pendleton Correctional | ) | |
| Facility, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Wexford of Indiana, LLC. ("Wexford"), Duan Pierce ("Dr. Pierce"), Jennifer Sturm ("Ms. Sturm"), and Kris Pryor ("Nurse Pryor"), (collectively, "the Defendants") (Dkt. 113). Plaintiff Douglas Reaves ("Mr. Reaves"), an inmate at Pendleton Correctional Facility ("Pendleton"), alleges in this civil rights lawsuit that the Defendants failed to provide him necessary medical care for his broken hand, in violation of his Eighth Amendment rights. For the reasons stated below, the summary judgment request is **denied**.

## I.    STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See* Federal Rule of Civil Procedure. 56(a). Summary judgment

is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.   FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all

reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

A.     **The Parties**

Mr. Reaves is an inmate of the Indiana Department of Correction ("IDOC") at Pendleton.

Wexford is a private entity that provided medical care to IDOC inmates at Pendleton. Dr. Pierce worked for Wexford as the Associate Regional Medical Director for Indiana and in that role he was responsible for providing leadership in administrative matters, clinical program development, quality management, and staff education. (Dkt. 115-2 at ¶¶ 2, 3.)  Dr. Pierce also traveled to Wexford sites to review clinical practices and train new clinicians. *Id.* He worked with onsite Medical Directors and onsite clinicians at the various sites within the IDOC. *Id.* at ¶ 4.

From April 1, 2019 through March 19, 2020, Ms. Sturm worked for Wexford as a medical assistant at Pendleton[1]. (Dkt. 115-3 at ¶ 1.)  Her responsibilities included identifying basic signs and symptoms of deviations from a normal health status, collecting basic health information from patients, performing vitals and initial screenings of sick call patients, assisting the physician or nurse with procedures and treatments, and providing information to an onsite nurse or physician. *Id.* at ¶ 2.  She also assisted in scheduling physician, dental, and sick call appointments and provided orders from physicians to the pharmacy for either new orders or refills. *Id.*  Ms. Sturm did not have the authority to diagnose patients or order specific medical care. *Id.* at ¶ 3.

Nurse Pryor worked as the Nursing Supervisor at Pendleton. (Dkt. 115-4 at ¶¶ 1-2.)  Her responsibilities included oversight of the nursing staff, carrying out physician's orders, dispensing medications, scheduling appointments, and meeting with patients to discuss medical concerns. *Id.* at ¶ 3.  Nurse Pryor does not have the authority to diagnose patients or order specific medical care.

---

[1] Although Mr. Reeves sued Ms. Strum as "Jennifer Sturm, RN, as a nurse," Ms. Strum clarifies in her affidavit that she is a Medical Assistant, and not a nurse. (Dkt. 115-3).

Instead, she is required to provide medical care and treatment as directed by the onsite practitioners. *Id.* at ¶ 4.

**B.     Mr. Reaves' Broken Hand**

On February 10, 2020, while going down the step in J-cell, Mr. Reaves slipped and injured his right hand, (fractured in two places, with comminuted fracture close to piercing the skin). (Dkt. 119-1 at 10.) He sought treatment in nursing sick call for this injury beginning at about 9:30 a.m.. *Id.* at 11. After making several call to be seen by medical, he was called over to the infirmary at approximately 5:30 p.m. *Id.* The nurse who saw him examined Mr. Reaves' hand, informed him that it looks like a "boxers break," provided him with Tylenol, an ace bandage and plastic ice bag. The nurse noted that Mr. Reaves hand was tender and painful with movement, and that it was swollen, and she immobilized his wrist with an elastic bandage and an x-ray was ordered. (Dkt. 115-1 at 6-7).

Mr. Reaves was scheduled to receive an x-ray on February 11, 2020; however, the Medical Department rescheduled his appointment because Medical personnel did not add Mr. Reaves' name to the list of inmates to be sent to the Medical Department for x-rays on that date. (Dkt. 119-1 at 3.) That day, Mr. Reaves showed his hand to Officer Christopher Allen ("Officer Allen"), who observed that it was severely swollen and bruised and it was in obvious need of medical attention. *Id.* at 3-4. Mr. Reaves informed Officer Allen that he was experiencing severe pain, that the Tylenol pain reliver he had been given on February 10, 2020 was not stopping his pain, and the pain was constant and on-going. *Id*. at 4. Officer Allen contacted the Medical Department and informed them of Mr. Reaves' condition. *Id.* A member of the Medical staff[2] told Officer Allen that Mr. Reaves would not be seen until after x-rays were taken. *Id*. Officer Allen explained that

---

[2] The staff member Officer Allen spoke to on this day has not been identified.

Mr. Reaves was in severe pain, his hand was black and blue with bruising and his condition appeared to be worsening, but the Medical staff member still refused to see Mr. Reaves. *Id.*

Officer Allen was off work for two days, and upon his return on February 14, 2020, he was informed that Mr. Reaves needed a staff member to place a call to medical regarding his injured hand. *Id* at 5. Officer Allen called the Medical Department again on February 14, 2020, and spoke to Ms. Sturm, who told him that Mr. Reaves would not be seen until x-rays were taken. *Id.* . Officer Allen observed Mr. Reaves' hand and the severe swelling and bruising had worsened, and Mr. Reaves was in severe pain and shaking. After witnessing Mr. Reaves' badly injured right hand, Officer Allen called the Medical Department a second time that day and explained that Mr. Reaves' hand had worsened and he was again told that Mr. Reaves would not be seen until x-rays were taken and that Mr. Reaves should get medication from commissary. *Id.* at 5-6. Later that day, Mr. Reaves again asked for medical attention and was again denied. *Id.* at 6.

Mr. Reaves was eventually taken to the Medical Department by correctional staff, where he encountered Nurse Pryor. *Id.* at 13-14. Nurse Pryor stated that his hand did look broken, but that he could not be treated until x-rays were taken. *Id.* at 14. Mr. Reaves told Nurse Pryor that his pain was severe and that he had run out of pain medication, but she did not assist him.[3] *Id.*

On February 19, 2020, Mr. Reaves again asked Officer Allen to have him seen by medical. *Id.* at 7. Officer Allen spoke with Ms. Sturm, who informed him that Dr. Pierce would not see Mr. Reaves without x-rays. *Id*. Officer Allen told Ms. Sturm that Mr. Reaves did not have pain medication and was unable to get medication from commissary because his scheduled commissary day was not until the next week. *Id.*

---

[3] Defendants dispute Mr. Reaves' assertions and point to his medical records, which contain no notation of a medical visit on this day and contend there is no evidence that Nurse Pryor denied Mr. Reaves care. But Mr. Reaves' statement in his affidavit that he saw Nurse Pryor and she denied his request for care is evidence of this interaction for purposes of summary judgment.

Mr. Reaves finally had an x-ray on February 20, 2020.  He was seen in nursing sick call on March 4, 2020, where he was advised to wear the brace for six weeks and to take Tylenol as needed for pain relief.  (Dkt. 115-1 at 9-10.)  The nurse denied his request to provide him with the suggested pain medication.[4]

On March 10, 2020, Mr. Reaves spoke with Dr. Pierce in the hall while returning from the law library.  (Dkt. 119-1 at 16.)  He asked Dr. Pierce to look at his hand, and Dr. Pierce refused to see him.[5]  *Id.*

In April 2020, Mr. Reaves met with Nurse Practitioner Sheri Wilson ("NP Wilson") for a chronic care appointment, where the pain in his hand was further discussed.  (Dkt. 115-1 at 12-17.)  The parties dispute the level of Mr. Reaves' pain on this date.  NP Wilson noted that the severity level of the pain was a "3," and it occurred "intermittently and [was] fluctuating."  *Id.* at 12.  Mr. Reaves states that he did not tell her his pain was a 3 but told her it was severe.  (Dkt. 119-1 at 18.)  While NP Wilson noted that Mr. Reaves complained of decreased mobility and joint tenderness, she further noted that there was no bruising, difficulty sleeping, joint instability, nocturnal pain, popping, or tingling throughout the arm. (Dkt. 115-1 at 12-17.)  NP Wilson noted that Mr. Reaves was wearing a gutter splint, which is a flexible splint that is used to support and stabilize dislocations and fractures of the hands, fingers, and wrists.  *Id.*  She told Mr. Reaves the gutter splint was not working.  (Dkt. 119-1 at 18.)  NP Wilson identified swelling and was concerned that his hand was not healing as quickly as normal, so she ordered an additional x-ray.  *Id.* She also ordered that ice be provided for the swelling and advised Mr. Reaves to purchase pain

---

[4] The parties dispute whether Mr. Reaves had access to pain medication at this time. *Id.* The nurse who saw him noted that Mr. Reaves indicated that he would get Tylenol on his own through the commissary and therefore no new order for Tylenol was placed at that time. *Id.*

[5] The Defendants similarly argue that there is no evidence that Dr. Pierce denied Mr. Reaves' care on this day because there is no notation in the medical records that Dr. Pierce saw him. Again, Mr. Reaves' sworn statement that he requested treatment is enough at this stage.

relief medication from the commissary as needed. *Id.* She reported to him that pain with this type of injury is normal, and further advised that he rest his hand and elevate it above his heart when he could. *Id.*

Over the next several months, Mr. Reaves saw medical professionals at Pendleton based on his reported concerns about his hand, including visits to nursing sick call and several visits with the onsite physician. He received several x-rays to continue to monitor the progress of the bones in the hand. (Dkt. 115-1 at 18-38.)

Mr. Reaves saw Dr. Pierce in December 2020 for a follow-up on his broken hand.[6] (Dkt. 44-2.) Dr. Pierce reviewed x-rays that had been taken in October 2020, which showed a healed fracture of the fifth metacarpal with mild bowing. *Id.*

Dr. Pierce opined that, in many cases, a fracture within the hand will heal well with nonsurgical treatment, including by wearing a splint or cast. (Dkt. 115-2 ¶ 13.) For some patients, a bony lump may appear at the spot of the fracture during recovery, which is identified as a "fracture callus." *Id.* Unfortunately for many patients, including Mr. Reaves, the healing of a bone within a hand can take time and can cause residual pain throughout the recovery process. *Id.*

### III.   DISCUSSION

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical

---

[6] Dr. Pierce stated in his affidavit in support of the motion for summary judgment that he had no interactions with Mr. Reaves about his broken hand after his February 2020 fall. (Dkt. 115-2 ¶ 12.) But Dr. Pierce explains in reply in support of the motion that this statement was an inadvertent failure to properly edit his affidavit, and he now admits that he did see Mr. Reaves about his hand in December 2020. (Dkt. 121 at 6.)

need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this Motion, the Court accepts that Mr. Reaves' broken hand was a serious medical need. To survive summary judgment then, Mr. Reaves must show that the defendants acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Mr. Reaves "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id*. (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id*. at 241-42.

## A.   Dr. Pierce

Dr. Pierce argues that he is entitled to summary judgment because there is no evidence that he disregarded Mr. Reaves' injured hand or his pain. Dr. Pierce bases this argument on his

contention that the only time he was involved in the care of Mr. Reaves' hand was when he ordered an x-ray on February 10, 2020 (the date of Mr. Reaves' fall) and when he saw Mr. Reaves in December 2020.  Mr. Reaves, however, explains that he saw Dr. Pierce in the hallway on March 10, 2020.  (Dkt. 119-1 at 16.)  According to Mr. Reaves, he asked Dr. Pierce to look at his hand and Dr. Pierce refused to see him.  *Id.*  While Dr. Pierce disputes whether this interaction took place, for purposes of summary judgment, the Court views these facts in the light most favorable to Mr. Reaves.  *Miller*, 761 F.3d at 827.  A reasonable jury believing this version of the events could conclude that Dr. Pierce was aware that Mr. Reaves was in pain and that Dr. Pierce disregarded his distress.  *See Grieveson v. Anderson*, 538 F.3d 763, 779-80 (7th Cir. 2008) (failure to obtain medical attention for inmate with a broken nose for one and half days could constitute a delay in treatment and deliberate indifference); *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("A significant delay in effective medical treatment may also support deliberate indifference … where the result is prolonged and unnecessary pain.")  Accordingly, Dr. Pierce is not entitled to summary judgment on Mr. Reaves' claims.

**B.**     **Ms. Sturm**

Ms. Sturm also argues that she did not exhibit deliberate indifference to Mr. Reaves' broken hand.  But Mr. Reaves has presented evidence that correctional officers spoke to her in February 2020 asking for treatment for his hand, which was swollen and painful.  (Dkt. 115-1 at 6-7.)  While Ms. Sturm did not have the authority to diagnose patients or order treatment, she did have the responsibility to screen sick-call patients and provide information to the nurse or doctor.  (Dkt. 115-3 ¶ 1-2.)  Reasonable jurors who believed that correctional officers sought assistance for Mr. Reaves from Ms. Sturm and that she did not ensure that he saw a nurse or doctor who could treat

him might conclude that he she was deliberately indifferent to his injury.  *See Grieveson*, 538 F.3d at 779-80.  Accordingly, Ms. Sturm is not entitled to summary judgment.

## C.   Nurse Pryor

Nurse Pryor seeks summary judgment arguing that she had no interactions with Mr. Reaves regarding his broken hand in February 2020.  But Mr. Reaves has presented evidence, through his affidavit, that he was taken to medical on February 14, 2020 and saw Nurse Pryor, who told him that he could not receive treatment before x-rays were taken.  (Dkt. 119-1 at 14.)  Mr. Reaves also affirms that he told Nurse Pryor that he was experiencing severe pain, but she did not assist him. *Id.*  While Nurse Pryor argues that this interaction is not in Mr. Reaves' medical records, the medical records are not incontrovertible evidence of every interaction Mr. Reaves had with medical personnel. *Manns v. Gray*, No. 1:11-cv-1550-TWP-MJD, 2013 WL 6622920, at *2 (S.D. Ind. Dec. 16, 2013) ("Unlike a video tape, [plaintiff's] medical records do not objectively negate his testimony.").  A reasonable jury who believed Mr. Reaves' version of these events might conclude that Nurse Pryor was aware that Mr. Reaves had an injury that needed treatment and that he was suffering severe pain but did nothing to assist him.  That jury might therefore decide that Nurse Pryor exhibited deliberate indifference to his serious medical needs. *See Perez v. Fenoglio*, 792 F.3d 768, 777-778 (7th Cir. 2015) (a delay in treatment that exacerbates an injury or unnecessarily prolongs pain may show deliberate indifference).  Consequently, Nurse Pryor is not entitled to summary judgment.

## D.   Wexford

Wexford argues that it is entitled to summary judgment because Mr. Reaves has no evidence of any Wexford policies, practices, or procedures that led to a violation of his constitutional rights.  Private corporations like Wexford, which act under color of state law, are

treated as municipalities for purposes of § 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). To support a claim against Wexford, Mr. Reaves must "trace the deprivation to some municipal action…, such that the challenged conduct is 'properly attributable to the municipality itself.'" *Dean*, 18 F.4th at 235. "A municipality 'acts' through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Co. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019). Next, he must show that the municipal action amounts to deliberate indifference. *Dean*, 18 F.4th at 235. "If a municipality's action is not facially unconstitutional, the plaintiff 'must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences.'" *Id.* (cleaned up) (emphasis in *Dean*). Finally, Mr. Reaves must show a direct causal link between the municipality's action and the deprivation of federal rights. *Id.*

Mr. Reaves argues that Wexford had a policy and practice of performing x-rays only on Tuesdays and Thursdays and that this policy caused his care to be delayed. Wexford responds that Mr. Reaves has no evidence of such a policy. But there is no dispute that Mr. Reaves' x-rays were delayed for more than a week. Further, Mr. Reaves has presented evidence that medical personnel would not provide him treatment until after he received x-rays. A reasonable jury that believed this version of the facts could conclude that Wexford had a policy of performing x-rays only twice a week and delaying care until x-rays were performed. A jury might further conclude that such a policy would create an obvious risk that inmates would experience delays in care, as Mr. Reaves experienced, and that Wexford was deliberately indifferent to this risk. Accordingly, Wexford is not entitled to summary judgment.

IV.   **CONCLUSION**

The Defendants' Motion for Summary Judgment, Dkt. [113], is **DENIED**.  This case will proceed to settlement or trial if one is necessary.

The **Clerk shall include** a form motion for assistance with recruiting counsel with Mr. Reaves' copy of this Order.  If he wishes to request that the Court attempt to recruit counsel to represent him for the remainder of the proceedings, he should fill out this motion and return it to the Court by **Monday, April 3, 2023**.

**SO ORDERED.**

Date: 3/7/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

12

DISTRIBUTION:

Douglas Reaves, #881987
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
STOLL KEENON OGDEN PLLC
doug.bitner@skofirm.com

Rachel D. Johnson
STOLL KEENON OGDEN PLLC
rachel.johnson@skofirm.com